# EXHIBIT 5

1979 WL 62160 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion Letter

WH-501

December 4, 1979

\*\*\*

This is an official reply to your letter of January 4, 1978, which includes twenty-one questions regarding the application of the Farm Labor Contractor Registration Act (FLCRA, copy enclosed). It provides answers to your questions, many of which have previously been answered informally or through Wage-Hour opinion letters available to the general public. It appears to us that many of the questions you pose are hypothetical; they do not to our knowledge describe actual cases.

The Farm Labor Contractor Registration Act requires "any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports **migrant** workers . . . for agricultural employment" to register as a farm labor contractor. Thus, a "person" must register to engage in farm labor contracting activities, unless one of the specific exemptions listed in Section 3(b) of the Act applies. The term "person" as defined in Section 3(a) of the Act "includes any individual, partnership, association, joint stock company, trust, or corporation." The following numbered answers respond to your questions in the order of your inquiry.

1.(a) "Is the term '**migrant** worker' used in FLCRA as the persons to be protected limited in any way by where the worker has 'migrated' or traveled from?"

No. The term "**migrant** worker" is not limited in any way by where the person has migrated or traveled from nor by whether he or she has migrated at all. The term "**migrant** worker" must be interpreted in accordance with the definition provided in the Act.

Section 3(g) of the Act (7 U.S.C. 2042(g)) provides:
  The term "**migrant** worker" means an individual whose primary employment is in agriculture, as defined in Section 3(f) of the Fair Labor Standards Act of 1938 (<u>29 U.S.C. 203(f)</u>), or who performs agricultural labor, as defined in <u>Section 3121(g) of the Internal Revenue Code of 1954</u> (26 U.S.C. 3121(g)), on a seasonal or other temporary basis.

Neither migration nor travel is included in the statutory definition. The legislative

history of the Act states that the farm laborers included in this definition are "the **migrants** who travel from state to state along fairly established patterns and <u>those who live permanently in the agricultural area where they work</u>." (Emphasis added, <u>S. Rep. No. 93-1295</u>, 93rd Cong. 2nd Sess., at p. 2; H.R. Rep. No. 93-1493, 93rd Cong., 2nd Sess. 6 (1974).)

The Ninth Circuit Court of Appeals found the definition of "**migrant** worker" to be "obviously a term of art, having no reference to workers with migratory tendencies. Originally defined in the Fair Labor Standards Act, it referred to a class [then] exempted from the Act's coverage, and its broad definition was supported by the agricultural industry. The apparent intent of the Act herein is to cover those excluded from the Fair Labor Standards Act." (Four cases consolidated for appeal purposes: <u>Marshall v. Coastal Growers Association</u>; <u>Marshall v. Matilija Growers Association</u>; <u>Marshall v. S&F Growers, and El Comite de Campesinos de S P Growers v. S P Growers Association, 598 F.2nd 521, 9</u>th Circuit, 1979.)

In <u>Marshall</u> v. <u>Point Sal Growers and Packers</u>, Ninth Circuit, 1979, <u>603 F.2d. 224,</u> Point Sal contended "that it does not employ '**migrant** workers' within the meaning of the Act because its work force is primarily composed of local area residents who work in the Guadalupe-Santa Maria area, either for Point Sal alone, or for the defendant and other local growers, on a year-round basis." The Court of Appeals rejected that contention and, referring to its decision in <u>Coastal Growers</u>, cited above, reaffirmed that such employees are **migrant** workers as defined in the Act.

1.(b) "Does FLCRA as amended in 1974 apply to all persons performing the named year-round services for 'all agricultural employees' as defined in the Fair Labor Standards Act, <u>29 U.S.C. Section 203(f)</u>, even though all persons involved are employees of a farmer, live year-round on the farmer's farm, and work solely for that farmer?"

Section 3(b) provides that the Act covers farm labor contracting performed with respect to "**migrant** workers" (as this term is discussed in answer to 1(a) above) who are to be engaged in or who engage in "agricultural employment" as defined in Section 3(d).

The statutory definitions make it clear that coverage of the Act does not depend upon whether the persons who engage in farm labor contracting perform such services the year round nor upon whether they live on the farmer's farm. Neither year-round employment nor residence on a farmer's farm is specified in Section 3 of the Act as a criterion for exclusion from the application of the Act.

The employment of a full-time or regular emplyee by a farmer in farm labor contracting activities <u>solely for the farmer</u> may qualify the employee for the exemption provided by Section 3(b)(3) of the Act if the farm labor contracting activities are engaged in by the employee on no more than an incidental basis. The application of this exemption is discussed in some detail in many of the following answers to your questions.

2.(a) "Is the term '**migrant** worker' as used in FLCRA to describe the persons to be protected by the Act limited to seasonal or temporary workers?"

No. As discussed in the reply to question 1(a), the term "**migrant** worker" as used in the Act to describe a person intended to be protected is not limited to seasonal or temporary workers. It clearly protects individuals whose primary employment is in agriculture as well as persons in year-round agricultural employment. (<u>Marshall</u> v. <u>Coastal Growers</u> and <u>Marshall</u> v. <u>Point Sal Growers and Packers</u>, supra.)

2.(b) "Does the phrase 'on a seasonal or other temporary basis' in 7 U.S.C. Section 2042(g) modify and limit the definition of agricultural employees in <u>29 U.S.C. Section 203(f)</u>, or do you interpret said phrase to limit only the definition in <u>26 U.S.C. Section 3121(g)</u>?"

The phrase "on a seasonal or other temporary basis" refers to agricultural employment as defined in both <u>29 U.S.C. 203(f)</u> and in <u>26 U.S.C. 3121(g)</u>. Both of these sections of the U.S. Code define agricultural employment for purposes of employment on a seasonal or other temporary basis as well as in connection with primary employment.

The term "primary employment," as used in the definition of "**migrant** workers," is intended to include any person whose chief, principal, or main occupation is in agriculture. Accordingly, "primary employment" includes employment which is contemplated to continue indefinitely. However, a person is a "**migrant** worker," regardless of primary employment, if he or she is employed in agriculture on a seasonal or other temporary basis.

3. "As a result of your answers to questions 1 and 2 above, do you conclude that FLCRA requires registration for all farmers' employees who regularly perform the specified activities with respect to all American farm workers?"

Our answers to questions 1 and 2 make it clear that the Farm Labor Contractor Registration Act requires registration and compliance with its provisions by any person defined as a farm labor contractor unless subject to a specific statutory exemption as provided in Sections 3(b)(1) through 3(b)(10).

4. You ask about persons who engage in farm labor contracting activities solely with respect to British West Indian cane cutters who enter the United States under the "H-2" program pursuant to a contract or contracts with the British West Indies Central Labour Organisation.

Section 3(b)(5)(B) provides an exemption from the Act to those persons whose farm labor contracting activities involve only obtaining **foreign migrant** workers whose employment is subject to written employment contracts that have been executed pursuant to the terms of an "arrangement" with the Government of a **foreign** nation. The "arrangement" envisaged by section 3(b)(5)(B) clearly contemplates the contract with the British West Indies Central Labor Organization, an entity established as the agent of the several governments, including, <u>inter alia</u>, Granada; St. Lucia; St.

Vincent, and Jamaica. This organization is charged with overseeing the general welfare of the **foreign** workers in the United States, including the negotiation of employment contracts with growers, as these contracts control the terms and conditions of the employment of the **foreign** workers. Thus, the enforcement of the employment contracts is the responsibility of the organization as the agent of the several British West Indian Governments. This agency, in turn, will perform its assigned duties through and with the assistance and offices of a United States agency designated for this purpose.

This exemption applies only to those persons whose farm labor contracting activities are concerned exclusively with "obtaining" the **foreign** workers covered by the "arrangement" and employment contracts made thereunder.

5. You ask about the applicability of section 3(b)(5) to a person who drives a bus daily to transport H-2 cane cutters. That section exempts from the Act a "person who-engages in [farm labor contracting] activities for the purpose of obtaining **migrant** workers of any **foreign** nation . . . ." The bus driver is not engaged in "obtaining" these workers; they have been "obtained" prior to this daily transporting. Thus, section 3(b)(5) is not applicable, and such a driver must register unless some other statutory exemption applies.

6(a). This question concerns the applicability of the Act to a year-round tractor driver. A year-round tractor driver transports himself and four other farm employees between home and work each day for about one hour per day on a truck provided by the farmer. This does not appear to be carpooling arranged by the workers themselves, since the farmer's truck is being used. The use of the farmer's truck and/or the pay for driving would constitute a fee for this transporting activity. See 29 CFR 41.5. The driver is engaging in a farm labor contracting activity--transporting-- and is covered by the Act. But the driver would be exempt under section 3(b)(3) of the Act if the transporting activity and any other farm labor contractor type activities do not constitute more than an incidental part of his employment.

To be entitled to the exemption provided by section 3(b)(3), a person must (1) be an employee of a farmer or other person referred to in sections 3(b)(1) or 3(b)(2); (2) be a full-time or regular employee of such person; (3) engage in any of the covered farm labor contracting activities referred to in section 3(b) solely for that employer; and (4) participate in such activities "on no more than an incidental basis."

The phrase "on no more than an incidental basis" is not defined by the Act. The legislative history makes it clear that it was the intent of Congress that only those full-time or regular employees who utilize only a limited portion of their time for farm labor contracting activities could qualify for the exemption under section 3(b)(3). As stated on pages 7 and 8 of the Senate Report No. 93-1295: ". . . While employment relationships vary, it is the Committee's intent that foremen and similar bona fide employees will not have to register as farm labor contractors if it can be shown, for example, that they are full-time and permanent employees of an employer who utilizes a limited portion of their time for activities as defined in section 3(b) of the Act."

We have adopted an interpretation that any full-time or regular employee of a farmer, processor, canner, ginner, packing shed operator or nurseryman who does not spend more than 20 percent of the time in farm labor contracting activities is performing on no more than an incidental basis and is exempt from the Act provided such farm labor contracting activities are performed solely for his employer. Accordingly, the tractor driver in this question would qualify for the exemption provided by section 3(b)(3) of the Act if all four of the tests specified in the Act are met and the driving duties of one hour per day do not exceed 20 percent of the time.

6(b). The above principles apply if all five tractor drivers share in the driving. None would need to register where all of the criteria for the exemption are met.

6(c). Where all of the persons qualify for a statutory exemption, the truck need not be registered and insured under the Act.

7(a). Three workers ride in a truck on public roads to pick up a load of tomato stakes at one field and take them to another field ten miles away where they unload the stakes. All three workers then return to the yard for their next assignment, which is to pick up a load of crated vegetables at a field and take it to a packing shed. Again all three workers ride the truck, load it and unload it. Such duties are a regular and continual part of their employment by the farmer; and they perform such duties solely in connection with the farmer's farming operations. You ask whether the truck driver must register himself and the truck.

The answer to this question is based on the principles stated in the answer to question number 6. The workers are being transported from worksite to worksite and thus are being transported for agricultural employment within the meaning of the Act. The driver of the truck would qualify for the exemption provided by section 3(b)(3) of the Act if all four of the tests specified in the Act are met. From the facts you give, it cannot be determined whether his driving duties would exceed 20 percent of the time.

7(b). The above principles apply if the three workers alternate as drivers. Whether they are required to register would be determined by whether the criteria for exemption are met.

8. The driving duties in this question involve two mess hall workers employed by a farmer during the five-month harvest period each year. These workers prepare the noon meal, load it on a truck, get on the truck, dirve five miles on a public road to a field where a crew of harvesters are working. After delivering the food, the two workers return to the labor camp and complete their duties in the camp. The driving duties involve one hour each day. You ask whether the drivers and the truck must be registered.

No one is required to register. The requirement under section 3(b) is for transporting **migrant** workers. We interpret "workers" to mean at least two in addition to the driver.

9. A driver of a tractor which pulls a harvesting machine on which other employees of the farmer work while harvesting the farmer's crops is not "transporting" within the meaning of the FLCRA. Thus, the employee driver need not register.

10. This question concerns driving duties in transporting workers. These driving duties are assigned as necessary to several reliable members of the harvest crew, each of whom drives the farmer's truck which is furnished to the foreman. Each drives for the purpose of transporting workers about once a week or approximately 20 times in each 20-week harvest season.

The answer to this question is based on the principles stated in the answer to question number 6. These drivers would qualify for the exemption provided by section 3(b)(3) of the Act if all four of the specified statutory tests are met. It is not clear that the drivers in question are full-time or regular employees. The driving duties appear to occupy less than 20 percent of the time.

11. This question concerns a farmer's field foreman who is furnished a truck to transport only himself to and from work. The Act does not cover this situation. Since no other employees of the farmer are transported, the field foreman need not register.

12. A field foreman employed full-time year-round by the farmer hires workers who come individually to the field seeking employment as pickers. These hiring activities involve about 15 minutes each morning. The foreman is paid a salary by the farmer; his primary duties are supervising and coordinating the work. All the workers hired become the employees of the farmer. Neither the foreman nor any other employee of the farmer does any recruiting, soliciting, or transporting of agricultural workers. You ask whether this foreman must register as a farm labor contractor. Senate Report 93-1295, at page 2, discusses the duties of a farm labor contractor: "Although the specific functions of the farm labor contractor, often called a 'crew leader' or 'crew pusher', might vary from job to job, his role essentially remains the same--a bridge between the operator and the worker. In many instances, the contractor is not only the recruiter, hirer, and transporter, but acts as the supervisor, foreman, and paymaster as well. In addition, the contractor frequently controls housing and other vital aspects of the workers' everyday needs."

It is the Department's conclusion that, if a full-time or regular employee of a farmer recruits, hires, solicits, furnishes, or transports **migrant** workers and spends more than 20 percent of his or her work time in these activities, he or she is performing farm labor contracting activities on more than an incidental basis and is not exempted by Section 3(b)(3). In relation to the employee's farm labor contracting activities, such employee may also engage in supervising **migrant** workers, acting as their foreman or paymaster, or supervising or controlling their housing. In such cases the time spent engaged in such related duties is counted as farm labor contracting activity in determining whether the 20 percent standard is exceeded.

13. "A farmer is in his field and sees that there are too few harvest workers. He tells his foreman, who is his full-time year-round employee, "Tell the workers to put out

Case 1:08-cv-00121-LJO-GSA   Document 84-18   Filed 07/09/10   Page 8 of 12

the word that we are hiring more pickers." The foreman, pursuant to this instruction, tells the workers, "We need more pickers. Tell your friends we are hiring pickers to join this crew." The pickers pursuant to this instruction do advise their relatives, friends, neighbors of the employment opportunity. As a result of such advice, some of these persons do come to the farmer's employment office the next day and hire on as picker-employees of the farmer. This is a regular and recurring process throughout the year. (a) Must the farmer register? (b) Must the foreman register? (c) Must the pickers who solicited and recruited register?"

We would not assert that the Act applies to the foreman in the situation you describe if all the foreman does is to advise workers on the farm to tell others of job opportunities. Similarly, the farmer is not required to register based solely upon the activities you describe in which the foreman is engaged. Our response does not address the activities of the farmer's employment office since your question does not describe its operation. Also, the pickers would not be required to register as a result of advising their friends and relatives of employment opportunities.

14(a). Engaging in farm labor contracting activities through the State Employment Services is discussed in the attached Opinion Letter WH-487 dated May 18, 1979. In accordance with that letter, the Wage and Hour Division will not impute to the personnel manager the actions of the State Employment Services. Developing lines of communication by placing newspaper and radio help wanted ads, however, does constitute farm labor contracting within the meaning of the Act. Such activities are treated in the attached Wage-Hour Opinion Letter No. 434 dated October 17, 1977. The farmer in your example has a personnel manager whose full-time job and principal duty consists of placing these advertisements and supervising those employees who recruit and hire.

Your letter does not indicate any facts which suggest the application of any statutory exemption. The following registration options apply where there is no statutory exemption. Specifically, a farmer whose activities are covered and not exempt has the following options:
    1. The farmer may register as farm labor contractor under Section 4(a) <u>and</u> have each of his or her full-time or regular employees who engage in any farm labor contracting activity register either as a farm labor contractor under Section 4(a) or as the employee of a registered farm labor contractor under Section 4(b), unless otherwise specifically exempt; or
    2. Perform his or her farm labor contacting activities only through registered farm labor contractors and their registered full-time or regular employees.

14(b). Jones' work is covered and not subject to any statutory exemption. The registration options which are discussed above are applicable.

14(c). A bus brings some forty workers to a grower's personnel office. The workers go individually to the hiring window, where some of them are hired. The bus then departs, carrying away those who were not hired. At the end of the day, the same bus returns to pick up those workers it had brought who were hired. Although the grower had advertised for workers, it had made no arrangement with any person to

bring workers to the farm.

Under these circumstances, there may be a farm labor contractor relationship between the workers and the labor contractor if he is transporting and furnishing them for a fee paid by the workers, regardless of whether a fee is paid by the farmer to the labor contractor. If such a labor contractor were not engaged by the farmer to supply farm labor through an express or implied understanding or contract, there would be no statutory obligation on the farmer under section 4(c) of the Act. If there is a covered farm labor contractor relationship between the workers and the labor contractor and no statutory exemption applies, the contractor would have to comply with all sections of the Act and regulations applicable to the contractor-worker relationship.

If there are circumstances other than those stated in your question which connect the farmer with the operator of the bus, there could be engagement of the services of a farm labor contractor by the farmer. Section 4(c) of the Act, which establishes the obligation of a person to engage only a qualified registered contractor, refers to a person who engages the services of a farm labor contractor to supply farm labor. In no case need the farmer register as a farm labor contractor.

15. You ask us to assume the same facts as in question 14(c) above except that the bus delivering the workers is recognized as the bus of a well-known crew leader.

See our answer under 14(c) above. The facts of any such situation found by the Department will be fully investigated to ascertain whether there are circumstances which connect the farmer with the farm labor contractor.

16. You ask that we assume the same facts as in question 15 above except that the labor contractor is hired by the farmer as a tractor driver.

This is a question of fact which would be fully investigated if found by the Department, as discussed above in replies 14(c) and 15. Since these facts indicate a connection between the farmer and the labor contractor, the Department would necessarily have a duty to explore whether such relationship in fact included the engaging of the services of a farm labor contractor to supply farm laborers within the ambit of section 4(c). Questions 14(c), 15 and 16 appear to explore the limits of section 4(c) of the Act through carefully structured hypotheses and do not relate to any conditions we have found.

17(a). This question concerns the driver of a truck sent by a farmer each day for a four month season to the county seat to pick up workers and return them each evening. The workers are picked up at a well-known gathering place sponsored by the State Employment Services where workers gather to sell their services.

The driver of the truck is engaging in all the named farm labor contracting activities and is covered by the Act. He is exempt, however, if these duties plus any other farm labor contracting activities which he may engage in do not take more than 20 percent of his time. To be entitled to the exemption provided by Section 3(b)(3), the driver

must meet all four tests discussed in our reply to question 6. The facts you give do not make it clear whether the driver is a full-time or regular employee of the farmer and whether the driver engages in farm labor contracting solely for that employer. Nor is there any indication as to whether the driver's farm labor contracting activities would constitute less than 20 percent of the time. It appears that the driver also recruits, solicits, hires, transports, and furnishes the workers. In such case if the driver is also their supervisor, foreman or paymaster, the criteria discussed in our answer to question 12 would apply. If the driver is exempt after applying all the statutory tests, then the truck would not have to be insured and registered provided it is for the purpose of supplying workers solely for the farmer's own operations.

17(b). This question concerns whether the insurance requirements of FLCRA apply where there is State workers compensation.

It is necessary to maintain the FLCRA insurance wherever the Act applies. The assumption on which you have based your example cannot be made. The Farm Labor Contractor Automobile Liability Certificate of Insurance certifies that the policy of insurance which has been issued includes a Farm Labor Contractor Liability Endorsement approved by the Department of Labor. Such Endorsement prohibits the application of exclusion (c) to bodily injury sustained by any **migrant** agricultural worker. In other words, FLCRA prohibits Workers' Compensation from being the exclusive remedy. In the particular situation you cited, Workers' Compensation may or may not provide minimum compensation availability which is at least equal to that provided by FLCRA. Once a Certificate of Registration is issued, the farm labor contractor may operate in any State in accordance with the terms of issuance listed on his certificate. For example, the card will either grant or deny authorization for the holder to transport workers and will restrict such transportation to particular vehicles, which will be listed on the Transportation Authorization Supplement. It does not, however, limit the use of the listed vehicles to any given locality. If the Workers' Compensation did meet the minimum limits required, and if the contractor transported workers only when the Workers' Compensation would be applicable, there would still be no guarantee that at any given time he would not receive a job offer which would take him out of the State. Therefore, consistent national standards must be met.

18. Four agricultural workers arrange to come to work each day in the car of one of them. Each of the three passengers pays $2.00 per day for the ride, clearly in excess of a pro rata share of the cost of operating the car. The car's owner has nothing to do with soliciting, recruiting, or hiring his three passengers as employees of the farmer, and neither the farmer nor his agents have anything to do with the transportation arrangement. All four are employed as agricultural tractor drivers by the farmer; all four receive the same wage rate. The Department of Labor does not intend to use its limited Farm Labor Contractor Registration Act resources in investigations of such situations.

19. "The employee recruits agricultural workers through interstate United States Employment Service job orders. Pursuant to agreement with the Department of Labor, the employer will advance a prepaid bus ticket to workers who will come to Florida to cut sugar cane. Four workers arrive at the Nashville, Tennessee

Employment Service Office and say they will cut sugar cane. The Employment Service representative, pursuant to the job order, calls the farmer's personnel office to obtain the prepaid bus tickets but also mentions that one of the workers has a car and all four of the workers desire to come to Florida in that car. The Employment Service officer asks whether the farmer will agree to pay the car owner the equivalent of four bus tickets to cover his car expense, payable when the workers arrive at the farm in Florida."

Assuming these to be the facts you ask the following questions:

"(a) If the farmer's personnel representative agrees to this proposal, does the farmer-employer thereby assume any obligation under FLCRA?"

No, the farmer-employer assumes no obligation under FLCRA.

"(b) Does the farmer's personnel representative assume any additional obligation as a result of this transaction?"

No, the farmer's personnel representative does not assume any additional obligation under FLCRA as a result of this transaction.

"(c) Does the car owner-driver have an obligation under FLCRA as a result of this single isolated transaction?"

No, the car owner-driver has no obligation under FLCRA as a result of this single transaction.

"(d) Does the farmer or his personal representative escape an obligation under FLCRA to have the driver and the vehicle registered and properly insured if the personnel representative responds to the Employment Service inquiry, 'Tell the workers we will prepay bus transportation but we will not pay for any other kind of transportation,' but he knows they are driving the car to Florida to accept the jobs in reliance on the ES job order?"

No, based on these facts, there is no obligation on the farmer for the driver on the vehicle to be registered under FLCRA.

20. and 21. You ask about the meaning of Section 3(b)(3) in terms of specific guidelines, including a percentage test, for the application of this provision.

We have answered questions 20 and 21 in the preceding replies, especially, in the answers to questions 6 and 12. As a result of the experience we have gained in the administration of the Act, we have adopted the percentage test discussed in the preceding answers. Our position on the application of Section 3(b)(3) is restated here.

We have adopted the interpretation that any full-time or regular employee of a farmer, processor, canner, ginner, packing shed operator, or nurseryman who does not spend more than 20 percent of his or her work time in farm labor contracting

activities is performing such activities on no more than an incidental basis and is exempt.

Case 1:08-cv-00121-LJO-GSA   Document 84-18   Filed 07/09/10   Page 12 of 12

Farm labor contracting activities are recruiting, soliciting, hiring, furnishing, and transporting **migrant** workers and may include certain related duties. As part of these farm labor contracting activities, such employees may engage in supervising **migrant** workers, acting as their foreman or paymaster, or supervising or controlling their housing. In such cases, the time spent in such related duties would be counted as farm labor contracting activity in determining whether the 20 percent standard is exceeded.

Your name has been placed on our mailing list to receive future opinion letters and publications regarding the Farm Labor Contractor Registration Act.

Sincerely,

C. Lamar Johnson
Deputy Administrator


Enclosures

1979 WL 62160 (DOL WAGE-HOUR)

END OF DOCUMENT

(c) 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.