IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE A. LOPEZ, JUAN CARLOS APOLINAR, JUAN JOSE ESTRADA SOTA, JUN JOSE CERVANTES, ISMAEL CUEVAS, REYNAR MENDOZA, AND JESUS RODRIGUEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>LASSEN DAIRY, INC., d/b/a MERITAGE DAIRY, TULE RIVER FARMS INC, TULE RIVER RANCH, INC, BONANZA FARMS, and WILLIAM VANDER POEL, SR.,<br><br>Defendants. | CASE NO. CV-F-08-121 LJO GSA<br><br>**ORDER ON DEFENDANTS' SUMMARY ADJUDICATION MOTION** (Doc. 42) |

### INTRODUCTION

Plaintiffs Jose A. Lopez, Juan Carlos Apolinar, Juan Jose Estrada Sota, Juan Jose Cervantes, Ismael Cuevas, Reynar Mendoza, and Jesus Rodriguez ("plaintiffs") assert eleven unfair wage and labor claims against defendants Lassen Dairy, Inc., d.b.a. Meritage Dairy, Tule River Farms, Inc., Tule River Ranch, Inc., Bonanza Farms, and William Vander Poel, Sr. (collectively "defendants"). Defendants move for summary adjudication of plaintiffs' first cause of action, which alleges violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801 *et seq.* ("AWPA"). Because the undisputed facts establish that plaintiffs' employment at Meritage Dairy was neither "seasonal" nor "temporary in nature," this Court GRANTS defendants' summary adjudication motion as to plaintiffs' AWPA cause of action.

# Background[1]

## Plaintiffs' Claims

Plaintiffs were employed by Meritage Dairy at various times between 2005 and 2007. Proceeding on the second amended complaint, plaintiffs seek recovery for wages and compensation under federal and California law based on allegations that defendants maintained and enforced against its non-exempt employees unlawful labor practices and policies. Among other things, plaintiffs allege that defendants violated AWPA by: (1) failing to pay minimum wages; (2) failing to provide plaintiffs rest periods; (3) requiring plaintiffs to work at least five hours without a meal period; (4) failing to provide split-shift pay to plaintiffs; (5) failing to pay plaintiffs premium overtime wages; (6) failing to pay plaintiffs all wages due upon voluntary or involuntary termination; (7) failing to maintain and provide to plaintiffs accurate itemized wage statements; (8) failing to pay plaintiffs statutory penalties; (9) forcing plaintiffs to purchase, use, and/or maintain tools and equipment (including gloves, scissors, and automobiles), but failing to reimburse them for these expenses at their fair rental value; (10) violating the terms of the "working arrangement"; and (11) failing to pay wages when due.

## Defendants' Undisputed Facts

Defendants rely on the following facts[2] to support their position that plaintiffs lack standing to assert AWPA claims:

Meritage Dairy has a year-round dairy operation that operates continuously to produce milk. Meritage Dairy has no slack season for milking cows. Milk production remains relatively constant through the year.

Plaintiffs were hired to perform work activities related to caring for and milking cows at Meritage Dairy. Plaintiffs' employment positions were permanent and continuous, not limited to a discrete time period. Meritage Dairy did not employ plaintiffs for seasonal or temporary agricultural work. Plaintiffs' positions were at will, and not dependent on the duration of a job task.

---

[1] The Court relies on the evidence presented by the parties in the record and cites to the most relevant for purposes of deciding this motion.

[2] Defendants facts are established by the declaration of Richard Oppedyk, who is an owner and Chief Financial Officer of Lassen Dairy, Inc., doing business as Meritage Dairy. Upon plaintiffs' request, Mr. Oppedyk provided discovery and submitted evidence to support his declaration.

None of the plaintiffs' positions with Meritage Dairy required them to be absent overnight from their permanent residence. Meritage Dairy is located in Kern County, California. Plaintiffs all provided permanent addresses located in Kern County. Defendants did not provide or arrange temporary housing for plaintiffs.

**Plaintiffs' Undisputed Facts**

Plaintiffs were employed by defendants to work at their dairy facilities caring for and milking cows. Defendants' dairy classifies employees in the following job categories: Milker, Cow Pusher, Cow Feeder, Calf Feeder, Maternity Barn Employee, Outside Help, and Relief Help. According to the job descriptions:

> Because [defendants] want to provide as much continued employment as possible for everyone working with [defendants'] company, employees may be required to do any number of jobs other that [sic] what is described in their basic qualification.

Cows are kept in outdoor pens and "pushed" to dairy barns by Cow Pushers to be milked. Pushers and relief helpers provide milking help in the barn when needed. Employees in various classifications performed work such as "blading hay and/or feed" (cow feeders, maternity barn employees, outside help, relief help), and chopping weeds, scrapping corrals, preparing alfalfa for feed and maintaining dairy grounds (outside and relief help). At all relevant times, plaintiffs were employed in "agricultural work."

**Procedural History**

Plaintiffs initiated this action on January 24, 2008, on behalf of themselves and others similarly situated. Plaintiffs are proceeding on their second amended complaint, filed on October 24, 2008. The Court has not considered the class certification question.

Defendants moved for summary adjudication on November 25, 2009. Plaintiffs moved to continue the summary adjudication motion to allow time for completion of discovery related to the issues raised in defendants' motion. This Court granted plaintiffs' motion, and set a further scheduling conference. A second scheduling order set a briefing schedule for this motion.

Plaintiffs opposed the pending motion on July 12, 2010. Defendants replied on August 6, 2010. This Court found this motion suitable for decision without a hearing, vacates the August 12, 2010 hearing pursuant to Local Rule 230(g), and issues the following order.

## STANDARD OF REVIEW

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor, but "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 290 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for trial." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

With these standards in mind, the Court turns to defendants' arguments.

## DISCUSSION

AWPA's purpose is to "assure necessary protections for migrant and seasonal agricultural workers[.]" 29 U.S.C.A. § 1801. Consistent with this purpose, the provisions of the Act provide protections for either "migrant agricultural workers" or "seasonal agricultural workers."[3] Thus, to assert an AWPA claim, plaintiffs must qualify as either "migrant agricultural workers," as defined by 29 U.S.C. §1802(8)(A), or "seasonal agricultural workers," as defined by 29 U.S.C. §1802(10)(A). Defendants argue that plaintiffs cannot establish that they meet either of those classifications. Because plaintiffs fail to raise a triable issue of fact as to whether they are "migrant agricultural workers" or "seasonal agricultural workers," this Court finds that plaintiffs lack standing to assert an AWPA claim.

### Migrant Agricultural Worker

The AWPA defines "migrant agricultural worker" as "an individual who is employed in agricultural employment of a seasonal or other temporary nature, and who is required to be absent overnight from his permanent place of residence." 29 U.S.C. §1802(8)(A). Based on this statute, three elements must be satisfied to establish that an individual is a migrant agricultural worker: (1) the employment must be agricultural in nature; (2) the employment must be of a seasonal or temporary nature; and (3) the employment required overnight absence from the worker's permanent place of residence.

Defendants contend that plaintiffs are not migrant agricultural workers, as defined by AWPA, because their employment with Meritage Dairy did not require overnight absence from their permanent place of residence. Plaintiffs do not dispute the factual basis for defendants' argument, nor the legal conclusion. Because defendants established that plaintiffs' employment did not require overnight absence from their permanent place of resident, this Court finds that plaintiffs do not qualify as migrant agricultural workers, as defined by AWPA, as a matter of law.

### Seasonal Agricultural Worker

A "seasonal agricultural worker" is:

---

[3] AWPA's provisions address other classes of individuals that are not implicated in this action.

5

an individual who is employed in agricultural employment of a seasonal or other temporary nature and is not required to be absent overnight from his permanent place of residence–
    (i) when employed on a farm or ranch performing field work related to planting, cultivating, or harvesting operations; or
    (ii) when employed in canning, packing, ginning, seed conditioning or related research, or processing operations, and transported, or caused to be transported, to or from the place of employment by means of a day-haul operation.

28 U.S.C. §1802(10)(A). The residential requirement of the seasonal agricultural worker definition is inapplicable under the facts of this action. Thus, to be "seasonal agricultural workers," plaintiffs: (1) must be employed in agricultural employment; and (2) the employment must be seasonal or temporary in nature.

**Agricultural Employment**

"Agricultural employment" is defined as "employment in any service or activity included within the provisions of section 2(f) of the Fair Labor Standards Act of 1983 (29 U.S.C. §203(f)), or section 3121(g) of Title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state." 29 U.S.C. §1802(3). "Dairying" is included in the definition of "agricultural employment." 29 U.S.C. §203(f). Defendants concede, for purposes of this motion, that plaintiffs were engaged in "agricultural employment." Accordingly, plaintiffs satisfy the first element of the seasonal agricultural worker definition.

**Seasonal or Other Temporary Employment**

Defendants contend that plaintiffs' employment was neither seasonal nor temporary in nature. For their argument, defendants rely on the definitions of "seasonal" and "temporary" labor provided in the Department of Labor regulations applicable to AWPA. According to the regulations, labor is "seasonal" where "the employment pertains to or is of the kind exclusively performed at certain seasons or periods of the year and which, from its nature, may not be continuous or carried on throughout the year." 29 C.F.R. §500.20(s)(1). A "worker who moves from one seasonal activity to another, while employed in agriculture or performing agricultural labor, is employed on a seasonal basis even though he may continue to be employed during a major portion of the year." *Id*. AWPA defines labor as "other temporary nature" where a worker "is employed for a limited time only or his performance is

contemplated for a particular piece of work, usually of short duration.  Generally, employment, which is contemplated to continue indefinitely, is not temporary." 29 C.F.R. §500.20(s)(2). "On a seasonal or temporary basis does not include the employment of any worker who is living at his permanent place of residence, when that worker is employed by a specific agricultural employer or agricultural association on essentially a year round basis to perform a variety of tasks for his employer and is not primarily employed to do field work." 29 C.F.R. §500.20(s)(4).

According to the Oppedyk declaration, Meritage Dairy has a year-round dairy operation that operates continuously to raise cattle and to produce milk from year to year.  Meritage Dairy has no slack season for milking cows, and milk production remains relatively constant throughout the year.  All named plaintiffs were hired at will for an indefinite period of time.  Any turnover in employees at Meritage Dairy is independent of the duration of a job task.  Based on these facts, defendants carried their initial burden to establish that plaintiffs' work at Meritage Dairy was not "seasonal" as defined by the regulations.

Similarly, defendants establish that plaintiffs' employment was not temporary in nature. Plaintiffs were employed at various times at Meritage Dairy, and for various lengths of time:

| Employee | Hired | Terminated |
|---|---|---|
| Jose A. Lopez | 4/13/07 | 9/19/07 |
| Juan Carlos Apolinar | 5/16/07<br>7/18/07 | 6/1/07<br>10/22/07 |
| Juan Jose Estrada Soto | 3/1/06 | 10/22/07 |
| Juan Jose Cervantes | 9/28/06 | 10/8/07 |
| Ismael Cuevas | 1/18/06 | 1/7/08 |
| Raynar Mendoza | 2/28/07<br>3/16/07 | 3/14/07<br>7/17/07 |
| Jesus Rodriguez | 12/3/05 | 10/24/07 |

The applicable regulation defines "temporary work" as follows:

> A worker is employed on other temporary basis where he is employed for a limited time only or his performance is contemplated for a particular piece of work, usually of short duration. Generally, employment, which is contemplated to continue indefinitely, is not temporary.

29 C.F.R. §500.20(s)(2). Thus, the relevant inquiry is whether the type of work is temporary in nature, or whether the type of work is ongoing. Although some plaintiffs worked at Meritage Dairy for a short period of time, the length of employment does not necessitate a finding that the employment was temporary in nature. Moreover, plaintiffs' subjective intent as to the nature or duration of the work is irrelevant:

> Many of the workers, however, consider themselves temporary workers because they frequently left DeCoster to perform other temporary agricultural work and then returned to DeCoster. But that circumstance was not due to the nature of the work. Instead, the work was available on a permanent basis and was not for a particular task that would be of short duration. The workers' subjective intent and the decisions they make as to how long they will stay employed cannot be the rule of decision for coverage of "temporary" work under the Act. Not only can no employer ever be confident of its employees' intentions as to permanent employment, but more importantly, the statute and the regulations direct our attention to the nature of the work, not the employee's intentions ("agricultural employment of a seasonal or other temporary nature").

*Ramirez v. DeCoster*, 194 F.R.D. 348, 356-57 (Dist. Me. 2000). Defendants submit evidence to establish that plaintiffs were employed for an indefinite period of time and for positions that were of an unlimited duration. Plaintiffs submit no evidence to dispute this evidence. Accordingly, this Court finds an absence of a genuine issue of material fact as to whether plaintiffs were employed on a temporary basis.

In opposition, plaintiffs argue that they qualify for AWPA protection because:(1) AWPA affords protections to all "migrant workers" within the meaning of the Farm Labor Contractor Registration Act ("FLCRA"); (2) the dairy industry is seasonal as a matter of law; (3) the dairy industry is seasonal under the analysis of *Caro-Galvan v. Curtis Richardson*, 993 F.2d 1500 (11th Cir. 1993); and (4) questions of law exist as to the seasonality of the dairy industry. The Court considers each argument below.

*"Migrant workers" under FLRCA*

Plaintiffs argue that they qualify for AWPA protection because AWPA covers all "migrant workers" within the meaning of the FLCRA. Under the FLCRA, an individual was a "migrant worker"

if his or her primary employment was agricultural within the meaning of FLSA, or he or she engaged in agricultural worker on a seasonal or other temporary basis. 7 U.S.C. §2042(g) (repealed 1983). Plaintiffs argue that this Court should interpret the AWPA broadly to encompass all agricultural workers who were protected under FLCRA. Because plaintiffs were employed primarily within agriculture, and qualify as a "migrant worker" under FLCRA, plaintiffs conclude that they qualify for AWPA protection.

Congress enacted the FLCRA in 1963, and substantially amended it in 1974. FLCRA Amendments of 1974, Pub. L. No. 93-518. In 1984, Congress repealed the FLCRA and replaced it with AWPA. Because the FLCRA has been repealed, this Court will not enforce its defunct provisions.

In addition, this Court is restricted by the plain language of the AWPA, which limits its protections to agricultural employees whose work is temporary or seasonal. Unlike the FLCRA "migrant worker" provision, the AWPA does not include language to allow protections for those who are employed primarily in agricultural work. As set forth above, a person must be employed in agricultural work that is seasonal or temporary to qualify for AWPA protection. 29 U.S.C. §1802(8)(A); 29 U.S.C. §1802(10)(A). This Court cannot ignore, as plaintiffs suggest, the plain language of the AWPA which limits its protections to those who engage in agricultural work that is seasonal or temporary:

> [I]t is up to Congress to determine what categories of workers deserve protection. Here, Congress has used plain language that simply will not encompass these workers, because their work is neither seasonal nor temporary. Congress could have left those limiting criteria out of the Act and extended its protection to any employee who engaged in agricultural-related labor and who left his home to be so engaged, but Congress chose not to. The statutory language is clear and must control.

*Ramirez*, 194 F.R.D. at 357. "AWPA allows *seasonal and migrant* agricultural employees to bring suit in federal court if employers fail to pay them wages owed or violate a working arrangement." *Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1091 (E.D. Cal. 2009) (emphasis added). Accordingly, this Court rejects plaintiffs argument, which improperly attempts to broaden the protections of AWPA beyond the plain language of the statute.

*Seasonal as a Matter of Law*

Plaintiffs argue that the dairy industry is seasonal as a matter of law. To support their position, plaintiffs cite inapplicable and inapposite case law and legislative histories. *See, e.g., Brannan v. Stark*, 342 U.S. 451, 460 (1952) (discussing in dicta that demand for milk is greater during the winter months

9

in the Boston area); *Defiance Milk Products Co. v. Lying*, 857 F.2d 1065, 1066 (6th Cir. 1988) (discussing federal regulation of marketing of milk in Ohio Valley area based on temporary glut of milk in that market); *Lames Dairy Inc. v. U.S. Dep't. of Ag.*, 379 F.3d 466, 469 (7th Cir. 2004) (milk handler's challenge to the milk marketing order); *United States v. Dairy Farmers Coop. Assoc.*, 611 F.2d 488, 490 (3d Cir. 1979) (holding that a milk handler must exhaust administrative remedies before challenging the milk marketing order); *Synser v. Block*, 760 F.2d 514, 521 (3d Cir. 1985) (appellant challenged emergency amendments to regional marketing order designed to insure that milk producers shared in the added transportation costs associated with a market glut). None of the cited cases or legislative histories relate to AWPA. In addition, although these cases discuss the supply and demand of milk, and milk marketing orders, none of the plaintiffs' cited legal authorities establishes that plaintiffs' employment–caring for and milking cows at the Meritage Dairy in California from 2005 through 2007–was seasonal as a matter of law.

### *Caro-Galvan vs. Ramirez*

The parties rely on separate cases to support their positions regarding whether plaintiffs' employment was seasonal within the meaning of AWPA. In their moving and reply papers, defendants rely on *Ramirez*, 194 F.R.D. 348, to support their position that plaintiffs' employment was not seasonal. In opposition, plaintiffs rely on *Caro-Galvan v. Curtis Richardson*, 993 F.2d 1500 (11th Cir. 1993) to argue that plaintiffs employment was seasonal. Having considered the parties' arguments and the cases, this Court finds *Caro-Galvan* distinguishable for the following reasons, and adopts the reasoning and conclusion of *Ramirez,* 194 F.R. D. 348, discussed *infra*.

First, the facts of *Caro-Galvan* are distinguishable from the instant case. In *Caro-Galvan*, the Eleventh Circuit found that agricultural workers were engaged in seasonal work under the following facts: "From January through May, [plaintiffs] harvested ferns. During the rest of the year–the distinct 'slack season' during which fern harvesting was so slow appellants could not even earn minimum wage doing it and thus were free to work elsewhere–they weeded, cleaned, did some harvesting, and worked other miscellaneous jobs." *Id*. at 1508. The parties did not dispute that the agricultural work related to the fern industry was seasonal. There was a distinct slack season in which the employees were free to work elsewhere, and could not earn even minimum wage working in the fern industry, because there was

little or no fern harvesting to be done during June through December. Here, there is no evidence to support an inference that there was a limited number of months, or a season, for the care and milking of cows. There is no evidence to suggest a "distinct slack season" that was so slow that plaintiffs could not earn minimum wage by milking, pushing, or feeding cows, or that the employees were free to work elsewhere because of the lack of work during the slack period of the year. Rather, the evidence presented establishes that Meritage Dairy operated year-round and continuously to produce milk and care for cows.

Second, the *Caro-Galvan* court ruled that the AWPA protects all "migrant workers" as defined under the FLCRA, 993 F.2d at 1507, a proposition this Court rejected above. The court considered the legislative history of the FLCRA and AWPA, and concluded that AWPA covers employees who engaged primarily in agricultural work as well as migrant and seasonal agricultural employees as defined by AWPA. The court noted that the plain language of the AWPA is narrower, but chose to give the statute a broader application:

> Admittedly, in defining "migrant worker" in FLCRA, Congress distinguished an individual for whom agriculture was "primary employment" from one who worked in agriculture "on a seasonal or other temporary basis," covering them both. 7 U.S.C. § 2042 (g) (repealed 1983). By contrast, AWPA covers only employment of a seasonal or other temporary nature. 29 U.S.C. §§ 1802(8)(A), 1802(10)(A). Hence, it is arguable that AWPA's scope is narrower than its predecessor's. We believe, however, that the legislative history clearly evinces Congress' intent not to narrow the class of protected workers, notwithstanding the somewhat different language of the two acts. Because farm laborers are poor, politically weak, and excluded from the overtime and collective bargaining rights afforded other types of workers, they always are vulnerable to exploitation, not just when they migrate from job to job. Construing AWPA broadly to effect its humanitarian purpose, we find that, like "migrant worker" under FLCRA, Congress intended "employment of a seasonal or other temporary nature" to be a term of art not limited to short-term or itinerant workers.

*Id*. at 1507. Unlike the *Caro-Galvan* court, this Court declines to interpret the statute beyond its plain language. Indeed, this Court cannot rely on legislative history to extend a statutory provision beyond its plain language. As this Court explained above, it is for Congress, not this Court, to decide the extent of a statute. Moreover, this Court questions the court's premise that the legislative history conclusively suggests that the AWPA provision is meant to have a broad interpretation. As the *Ramirez* court points out:

> there is some legislative history that suggests that some members of Congress thought

11

that previous legislation had been interpreted too broadly in its coverage. AWPA's predecessor, the Farm Labor Contractor Registration Act, defined a migrant worker as "an individual whose primary employment is in agriculture, as defined in section 203(f) of title 29, or who performs agricultural labor, as defined in section 3121(g) of title 26, on a seasonal or other temporary basis." 7 U.S.C. § 2042(g) (repealed 1983). Rep. Panetta, one of the sponsors of AWPA, co-sponsored a bill to limit the definition of "migrant worker." Citing his "shock" that "'migrant worker' no longer means migrant worker[; it] is now interpreted by the Labor Department to mean any employee who is performing agricultural work," Rep. Panetta proposed a limiting definition to "migrant worker" substantially similar to that found in AWPA. 127 CONG. REC. H10353, 10354 - 55 (daily ed. May 20, 1981) (statement of Rep. Panetta); H.R. 3636, 97th Cong. § 8 (1981) ("The term 'migrant worker' means an individual who is engaged in agricultural employment on a seasonal or other temporary basis and who cannot regularly return to his or her domicile each day after working hours").

194 F.R.D. at 357 n. 10. Thus, the legislative history is conflicting. This Court need not attempt to resolve the conflict, however, because the statutory language is clear and controlling.

Third, the distinguishable facts led the *Caro-Galvan* court to interpret a part of the regulations that are inapplicable to this action. In *Caro-Galvan*, the parties did not dispute that the fern industry was seasonal. The question presented was whether the employees worked on a seasonal or temporary basis because they performed other miscellaneous jobs for their employer during the slack season. In considering the applicable AWPA regulation, the *Caro-Galvan* court noted:

> [L]abor is performed on a seasonal basis where, *ordinarily*, the employment pertains to or is of the kind exclusively performed at certain seasons or periods of the year and which, from its nature, may not be continuous or carried on throughout the year. *A worker who moves from one seasonal activity to another, while employed in agriculture or performing agricultural labor, is employed on a seasonal basis even though he may continue to be employed during a major portion of the year.*

29 C.F.R. § 500.20(s)(1) (quoted in *Caro-Galvan*, 993 F.2d at 1507) (emphasis in *Caro-Galvan*). The court further considered 29 C.F.R. § 500.20(s)(4), which provides:

> Seasonal or temporary work does not include the employment of any worker who is living at his permanent place of residence, when that worker is employed by a specific agricultural employer or agricultural association on essentially a year round basis to perform a variety of tasks for his employer and *is not primarily employed to do field work.*

*Id*. at 1507-08 (emphasis added). The Court interpreted these regulations to conclude that if "the worker performs 'field work,' he or she is employed on a seasonal temporary basis," even if it is "year-round employment." *Id*. at 1508. This Court need not apply these legal extrapolations to the facts of this case, because the question presented to this Court relates to the first sentence of 29 C.F.R. § 500.20(s)(1);

1 namely, whether the employment was performed at certain seasons of the year, or whether it may be continuous or carried out throughout the year. The *Caro-Galvan* court did not consider or interpret this provision.

By contrast, this Court finds the case relied upon by defendants, *Ramirez*, 194 F.R.D. 348, to be instructive. In *Ramirez*, the court ruled that employment in an egg production business is not seasonal, as it "operates year-round, has no slack season, and is continuous." *Id*. at 357. In so ruling, *Ramirez* relied on 29 C.F.R. §200.50(s)(1), the Secretary of Labor's interpretation of the meaning of seasonal labor as applied to AWPA. This Court gives deference to the United States Secretary of Labor's interpretation of AWPA, as the Department of Labor is charged to enforce the statute. *See Chevron, U.S.A., Inc. v. Nat. Resources Def. Council*, 467 U.S. 837, 844-45 (1984). Pursuant to the applicable regulation, as set forth above, "labor is performed on a seasonal basis where, ordinarily, the employment pertains to or is of the kind exclusively performed at certain seasons or periods of the year and which, from its nature, may not be continuous or carried on throughout the year." 29 C.F.R. § 500.20(s)(1). Accordingly, this Court considers whether plaintiffs raise a triable issue of fact under this definition.

*No Disputed Material Facts*

In their motion, defendants argued that plaintiffs' work was not seasonal because Meritage Dairy operates year-round, has no slack season, and their employees' labor is continuous. Defendants offered admissible evidence to support this position. In addition to the declarations, defendants submitted monthly milk production and feeding data for the October 2005-November 2009 time period. The records demonstrate that cows produced milk each month throughout the year, without a noticeable variation related to a season, and at a relatively constant rate. Cows gave birth each month of the year, without a noticeable variation related to a season. Cows were milked at Meritage Dairy every day of the year. Thus, no "distinct slack season" in milk production is apparent from defendants' milk production records. In addition, defendants' evidence establishes that daily animal husbandry was required regardless of whether cows were milking or giving birth. Cows were fed daily, including those cows who were not producing milk.

Defendants further submit evidence that they turned these records over to plaintiffs, despite plaintiffs' contrary assertions. Indeed, this Court stayed this motion, filed in November 2009, to allow

plaintiffs to conduct discovery on this issue. Although plaintiffs were in possession of defendants' records, plaintiffs do not argue that the Meritage Dairy milk production and feeding records give rise to an inference that the employment was seasonal. Instead, Plaintiffs ignore this evidence entirely in their opposition, and produce no admissible evidence to dispute defendants' evidence.

In an attempt to dispute defendants' facts, plaintiffs argue that the term "seasonal" is ambiguous. Defendants point out in their reply, however, that "seasonal" labor is defined by the regulation, as set forth above. In their opposition, plaintiffs ignore the AWPA regulations that define "seasonal" labor. Because the Court defers to the administration's interpretation of the statute, this Court finds that "seasonal" labor is not ambiguous, as it is defined in the regulations. Accordingly, plaintiffs fail to raise a disputed material fact by challenging the meaning of the term seasonal.

Plaintiffs also rely on scholarly articles in an attempt to establish that dairy cows undergo seasonality. Defendants object to the admission of these articles as an improper attempt to introduce expert testimony, without having provided the required disclosures in discovery, and inadmissible hearsay. This Court agrees with defendants, and will not rely on plaintiffs' proffered articles.

Ultimately, plaintiffs' declarations fail to raise a genuine issue of material fact as to whether plaintiffs' employment was "seasonal" as defined by AWPA. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In their declarations, plaintiffs do not dispute that employment at Meritage Dairy related to the caring for and milking of cows "operates year-round, has no slack season, and is continuous." Rather, according to the declarations, plaintiffs worked 10 or more hours every day, six days a week, throughout their employment. Although plaintiffs contend that there was more work in some months than other months, plaintiffs' statements do not give rise to an interference that there was a prolonged time period in which there was no work for their position, or that there was a specific time period during the year that the position was necessary or unnecessary. Indeed, plaintiffs' declarations do not give rise to a specific seasonality, as some plaintiffs claimed that there were more births in summer months, while others declare that there were more births in winter months. Plaintiffs' declarations do not address defendants' evidence that establishes that there is a consistent, year-round demand for employment at Meritage Dairy

related to animal husbandry, milking and birthing, and other tasks related to the caring for and milking of cows.

Plaintiffs declarations relate to their labor and wage violation claims, but do not raise issues of whether employment at Meritage dairy "is of the kind exclusively performed at certain seasons or periods of the year and which, from its nature, may not be continuous or carried on throughout the year." 29 C.F.R. § 500.20(s)(1). Plaintiffs' declarations provide no evidence that gives rise to an inference that there was a slack season for a Milker, Cow Pusher, Cow Feeder, Calf Feeder, Maternity Barn Employee, Outside Help, and Relief Help at Meritage Dairy, in which an employee could not earn a living during certain months of the year and was free to leave that employment during the slack season. The evidence demonstrates that there was consistent work throughout the year for each of those positions, notwithstanding some fluctuation in birthing and milking rates. Because plaintiffs fail to raise a genuine issue of disputed fact as to whether plaintiffs were engaged in agricultural employment that was "seasonal," this Court finds that plaintiffs lack standing to raise an AWPA claim.

### Leave to Amend

In their opposition, plaintiffs argue that, in the event this Court grants summary adjudication on plaintiffs' AWPA claim, this Court should grant plaintiffs leave to amend their complaint to substitute two plaintiffs and to assert a Class Action Fairness Act ("CAFA") claim. Defendants oppose plaintiffs' request, arguing that plaintiffs seek to amend their complaint improperly without following standard motion practice. Defendants argue that this Court should deny plaintiffs request, as the improper notice left defendants with only seven days to address not only the substantive and relevant issues in the opposition to defendants summary adjudication motion, but also the complex issues of whether plaintiffs have grounds to pursue a CAFA claim. This Court agrees. Plaintiffs must notice and move for leave to file a third amended complaint in accordance with this Court's local rules. Accordingly, this Court denies without prejudice plaintiffs' leave to amend request. It is not lost on the Court that a good deal of money is being wasted at the pleading stage due to a lack of diligence by the Plaintiffs. This should not be, and will not be in any way rewarded.

### CONCLUSION

For the foregoing reasons, this Court:

1. GRANTS defendants' summary adjudication motion as to plaintiffs' AWPA cause of action;
2. DENIES plaintiffs' request for leave to file a third amended complaint; and
3. VACATES the August 12, 2010 hearing on this motion.

IT IS SO ORDERED.

Dated:   **August 10, 2010**          /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE